```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

**WILLIAM THURMAN**                                             **CIVIL ACTION**

**VERSUS**                                                      **NO. 13-0213**

**TERRY TERRELL, WARDEN**                                       **SECTION "G"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. §2254(e)(2).[1] For the following reasons, the Court recommends that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE.**

---

[1] Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. §2254(e)(2)(B).

I.   FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, William Thurman, is a convicted inmate currently incarcerated in the Allen Correctional Center, Kinder, Louisiana.  On May 28, 2002, Thurman, along with co-defendant Ronald Baker, was charged by bill of information in Tangipahoa Parish with aggravated burglary in violation of LSA-R.S. 14:60.[2] The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> The victim, Bonnie Ferrara Shelton, testified at trial.  She was familiar with defendant because he had been friends with Leroy, her ex-husband.  She separated from Leroy in October 2001.  Shelton denied having any type of relationship with defendant in 2001 and estimated that she was in his presence only three times that year. She also denied selling drugs to defendant or anyone else.
> According to Shelton, on December 16, 2001, at approximately 5:00 a.m., she was awakened by someone calling her name, knocking on her bedroom window, and beating on her door.  She recognized defendant's voice and opened her side door. Defendant stated, "Leroy owes me money, pills, I need some money." Shelton told defendant that she did not have any money and asked him to leave.  Defendant told her that he was not going anywhere and put his foot in the door to keep her from closing it.  Shelton turned to go to her bedroom to get a telephone, and defendant and another man, who had his face covered by a towel, entered Shelton's home. Defendant shoved her down on her bed, and the other man, identified as Ronald Baker, began punching her.  Shelton testified that Baker punched her first, but she then felt multiple blows at the same time.  Shelton begged for her life and urinated on herself.  After she was beaten for approximately ten minutes, the men stopped for a short time, but then beat her again.  During the attack, Shelton saw Baker point to the victim's purse and saw

---

[2]St. Rec. Vol. 1 of 2, p. 30.  Thurman was tried separately.

>   defendant take the purse and walk out of the bedroom. Defendant told Shelton, "[D]on't call the law or we will come back and kill you."
>       The defense claimed that the offense was "a dope deal gone bad," that Shelton had invited defendant to her home, and that Baker was the only individual who had beaten Shelton. The defense presented the testimony of Geraldine A. Stewart, defendant's mother.
>       Stewart claimed that on December 16, 2001, at approximately 1:15 a.m., Shelton called her and stated that she (Shelton) had invited defendant to her home to pick up thirty dollars. According to Stewart, Shelton stated she used the money to pay a bill before defendant arrived, and he got mad and brought some guy with him that beat her up. Stewart also claimed that Shelton constantly flirted with defendant and told him to come by her house.

State v. Thurman, 30 So.3d 1185 (Table), 2010 WL 1170226, at *1-2 (La. App. 1st Cir. 3/26/10). St. Rec. Vol. 2 of 2.

On October 21, 2003, trial commenced before a jury in the Twenty-First Judicial District Court of the Parish of Tangipahoa, State of Louisiana.[3] On October 22, 2003, Thurman was found guilty of simple burglary.[4] On November 5, 2003, the trial court sentenced Thurman to twelve years imprisonment with credit for time served.[5] On November 30, 2004, pursuant to the State's multiple bill, Thurman was found to be a second felony offender. The trial

---

[3] St. Rec. Vol. 1 of 2, p. 152.

[4] Id. at p. 409.

[5] Id. at pp. 412 and 417.

court vacated Thurman's original sentence and resentenced him to 24 years imprisonment with credit for time served.[6]

On March 26, 2010, pursuant to Thurman's out-of-time appeal, the Louisiana First Circuit Court of Appeal affirmed Thurman's conviction, habitual offender adjudication and sentence.[7]  On June 24, 2011, the Louisiana Supreme Court denied Thurman's writ application.[8]

Thurman's conviction became final 90 days later, on September 23, 2011, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On March 15, 2012, Thurman filed with the state district court an application for writ of habeas corpus.[9]  On March 26, 2012, the state district court denied relief.[10]  On July 16, 2012, the

---

[6]Id. at pp. 444 and 447.

[7]State v. Thurman, 30 So.3d 1185 (Table), 2010 WL 1170226 (La. App. 1st Cir. 3/26/10).  St. Rec. Vol. 2 of 2.

[8]State ex rel. Thurman v. State, 64 So.3d 212 (La. 2011).  St. Rec. Vol. 2 of 2.

[9]St. Rec. Vol. 1 of 2.

[10]Id.

4

Louisiana First Circuit Court of Appeal likewise denied Thurman post-conviction relief.[11] On November 16, 2012, the Louisiana Supreme Court denied Thurman's writ application.[12]

II. <u>FEDERAL HABEAS PETITION</u>

On January 10, 2013, Thurman filed the instant petition for federal habeas corpus relief asserting the following claims: (1) There was insufficient evidence to support his conviction. (2) He received ineffective assistance of counsel.

In its response, the State concedes that Thurman's petition is timely and that he has exhausted his state court remedies.[13]

III. <u>GENERAL STANDARDS OF REVIEW</u>

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254. The AEDPA went into effect on April 24, 1996[14] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Thurman's petition.

---

[11] <u>State v. Thurman</u>, No. 2012-KW-0671 (La. App. 1st Cir. 7/16/12). St. Rec. Vol. 2 of 2.

[12] <u>State ex rel. Thurman v. State</u>, 102 So.3d 36 (La. 2012).

[13] Rec. Doc. No. 7, pp. 4-5.

[14] The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the Court finds that Thurman has overcome the above hurdles.  The instant action is timely and Thurman has exhausted his state court remedies.

IV.   STANDARDS OF MERITS REVIEW

28 U.S.C. §§2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and

convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir. 2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); accord Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S.

7

19, 24-25 (2002)) (brackets in original); accord Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (citing Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.   SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 1)

Thurman alleges that the victim's testimony "should be viewed with great suspicion."[15] Thurman contends that the victim's testimony was untrustworthy because while she claimed she urinated on her bed after the alleged attack, rather than take a shower or change her clothes, Shelton went to the store to get cigarettes. Further, the initial investigative report did not corroborate Shelton's claim that she suffered an injury to her eye. Finally, Thurman points to the lack of any testimony that the owner of the store reacted to her injuries when he saw her after the alleged attack.[16]

---

[15]Rec. Doc. No. 1-1, p. 8.

[16]Id.

8

Under <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), this Court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. <u>Id</u>., 443 U.S. at 319; <u>Perez v. Cain</u>, 529 F.3d 588, 594 (5th Cir. 2008); <u>Williams v. Cain</u>, 408 Fed. Appx. 817, 821 (5th Cir. 2011).  Thus, to determine whether the commission of a crime is adequately supported by the record, the Court must review the substantive elements of the crime as defined by state law. <u>Perez</u>, 529 F.3d at 594 (citing <u>Jackson</u>, 443 U. S. at 324 n. 16).  The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See <u>McDaniel v. Brown</u>, 558 U.S. 120, 130-31 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under <u>Jackson</u>); <u>Johnson v. Cain</u>, 347 Fed. App'x 89, 91 (5th Cir. 2009) (<u>Jackson</u> standard relies "upon the record evidence adduced at the trial.") (quoting <u>Jackson</u>, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury.  <u>United States v. Young</u>, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993); <u>see also</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the

9

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Thurman was convicted of simple burglary. Simple burglary is defined in pertinent part in La. Rev. Stat. § 14:62 as follows:

> Simple burglary is the unauthorized entering of any dwelling . . . with the intent to commit a felony or any theft therein . . . .

"Specific intent is required for a conviction for simple burglary, and it may be inferred from the circumstances and actions of the accused."  State v. Austin, 113 So.3d 306, 312 (La. App. 5th Cir. 3/13/13) (citation omitted).  Specific criminal intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. §14:10(1).  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  State v. Tate, 851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)); State v. Sharlhorne, 54 So.2d 1317, 1321 (La. App. 1st Cir. 1989).

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness.  Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon determination of the credibility of witnesses, the matter is one of the weight of the evidence, not its sufficiency.  The trier of fact's determination of the weight of evidence is not subject to appellate review.  An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt.  State v. Taylor, 97-2261, pp. 5-6 (La. App.1st Cir.9/25/98), 721 So.2d 929, 932.

At trial, the victim, Bonnie Shelton, testified that she "urinated all over her bed . . . ."[17] Thereafter, she testified that rather than take a shower, she went in her "night clothes" to the store to get cigarettes.[18] She offered no testimony to the effect that the store owner reacted to or commented on her appearance. Further, Shelton testified that she suffered an injury to her eye.[19] However, Officer James Hyde, who arrived on the scene shortly after the incident, made no mention of an injury to Shelton's eye. Officer Hyde testified that Shelton had "a busted lip," "bruise to her forehead," and "knots on her head."[20]

The alleged insufficiencies in Shelton's testimony were placed squarely before the jury. Thurman attacks Shelton's credibility because she testified that she went to the store in her bed clothes after urinating on her bed, rather than take a shower or change clothes. The jury was aware of that fact. Thurman notes that Shelton complained about an injury to her eye, but the initial investigating officer made no mention of an eye injury. The jury was aware of that fact. The jury was likewise aware of the fact that the store owner did not react to Shelton's injuries. Shelton

---

[17] St. Rec. Vol. 1 of 2, p. 258.

[18] Id. at p. 262.

[19] Id. at p. 264.

[20] Id. at p. 204.

offered no testimony to the effect that the owner commented on her alleged eye injury or busted lip or bruised forehead.

The jury was aware of all of the insufficiencies which, according to Thurman, made Shelton's testimony untrustworthy. The jurors, by virtue of their guilty verdict, nevertheless found Shelton to be credible. Credibility determinations are squarely within the province of the jury. Young, 107 Fed. Appx. at 443 (citation omitted). The state courts' rejection of the instant claim does not represent an unreasonable application of Supreme Court law to the facts of this case. Thurman is not entitled to habeas relief.

VI.   INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIM 2)

Thurman claims that counsel was ineffective in failing to obtain testimony from Ronald Baker which would have contradicted Shelton's testimony. Thurman contends that Baker would have contradicted Shelton's testimony that they forcibly entered her home.[21]

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this Court is whether the state courts'

---

[21]Rec. Doc. No. 1-1, p. 11.

denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this Court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693);

14

Harrington v. Richter, 131 S.Ct. 770, 792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the Court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

15

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Thus, scrutiny of counsel's performance under §2254(d) is "doubly deferential." Cullen, 131 S. Ct. at 1403 (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)). Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector, 120 F.3d at 564) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

Thurman claims that counsel was deficient in failing to procure from Baker testimony reflecting that Shelton let them into the house, i.e., that they did not forcibly enter the house.

At trial, defense counsel called Baker as a witness. The following colloquy ensued.

```
BY MR WELLS [DEFENSE COUNSEL]:
    Q.   Mr. Baker, please state your name and address
for the record.
BY MR. BAKER:
    A.   Ronald Wayne Baker Sr.  18 - - 18780 Perrin
Drive, Ponchatoula, Louisiana
    Q.   And you were a co-defendant, originally billed
with William Thurman, in this case?
    A.   Yes, sir.
    Q.   I'd like to direct your attention to the night
of December the 16th, 2001.  And I'd like to ask you
questions about what went on that night.[22]
```

At that point, Baker asked if he could "exercise my right to the Fifth Amendment?" The trial court responded in the affirmative and Baker refused to offer any testimony about what transpired on the night at issue.

Allegations of what a witness's testimony would have been are not favored because such allegations are "largely speculative." Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quotation omitted). Given that Baker refused to offer any testimony as to what happened on the night in question, it is "largely speculative" that Baker would have changed his mind in this regard and answered certain questions regarding the crime if that questioning were allowed to move forward. Clearly counsel attempted to question Baker, to no avail. Baker unequivocally stated that he intended to invoke the Fifth Amendment "throughout the entirety" of questioning

---

[22]St. Rec. Vol. 1 of 2, pp. 375-76.

and answering.[23] Counsel therefore acquiesced and allowed him to leave the stand.

The Court finds that Thurman has failed to satisfy his burden of proof under the Strickland test.  Defense counsel called Baker as a witness.  Counsel had no control over Baker's decision to invoke his right not to testify under the Fifth Amendment.  Counsel was not deficient in this regard.  The state courts' rejection of Thurman's ineffectiveness claim does not represent an unreasonable application of Supreme Court law to the facts of this case.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of William Thurman, for issuance of a writ of habeas corpus under 28 U.S.C. §2254 be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en

---

[23]Id.

banc).

    New Orleans, Louisiana, this __18th__ day of September, 2013.

                                          ALMA L. CHASEZ
                              UNITED STATES MAGISTRATE JUDGE